IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| LILLIAN SLATER,<br><br>               Plaintiff,<br><br>vs.<br><br>SCOTT COUNTY, GREG GAUDET,<br>WILLIAM LOMBA, and NICOLE FLOWERS,<br><br>               Defendants. | No. 3:07-cv-00125-JAJ<br><br><br><br>**ORDER** |

## I.  INTRODUCTION & PROCEDURAL HISTORY

This matter comes before the court pursuant to plaintiff's May 7, 2010 application for attorney fees [dkt. 187].  Defendant filed its response to plaintiff's fee application on June 7, 2010 [dkt. 194].  Plaintiff filed her reply brief in support of her attorney fee application on July 18, 2010 [dkt. 205].  The court heard oral argument on plaintiff's application for attorney fees on March 24, 2011 [dkt. 236].

Plaintiff filed a First Amended Complaint on January 25, 2008 against defendants Scott County, Scott County Sheriff's Office, Scott County Sheriff Dennis Conard (in his official and individual capacities), Greg Gaudet, William Lomba, Martin Kearney, Tamara Mitchell, Casey Henderson, unknown correctional officers, Scott C. Ludwig, Nicole Flowers, Sharon Gerth, and unknown medical staff [dkt. 12].  Plaintiff brought her action under 42 U.S.C. § 1983, alleging various constitutional violations, i.e., Count I alleged deliberate indifference to her objectively serious medical needs in violation of the Fourteenth Amendment, Count II alleged excessive use of force, Count III alleged violations of the Fourth, fifth, Six, Eighth, and Fourteenth Amendments, Count IV alleged a state law claim of intentional infliction of emotional distress, Count V alleged a state law claim of battery, Count VI alleged a state law claim of respondeat superior, and Count VII alleged a state law claim of indemnification.

Factually, plaintiff alleged that she suffers from sickle cell anemia and that she suffered a painful flare-up of her sickle cell anemia while being detained at the Scott County Jail on January 25 to January 26, 2006. Plaintiff further alleged that, instead of providing medical care to alleviate her medical condition, the correctional officers and medical staff refused her medical assistance and instead physically restrained her in a "restraining chair" for at least seven hours.

Plaintiff's excessive force and deliberate indifference claims proceeded to trial April 19, 2010 against defendants Scott County, Greg Gaudet, William Lomba, and Nicole Flowers [dkt. 165]. The other claims were either voluntarily dismissed by the plaintiff or dismissed by the court. On April 23, 2010 the jury found in favor of the plaintiff and against defendants Gaudet and Lomba on plaintiff's excessive force claim and in favor of defendant Flowers on plaintiff's excessive force claim [dkt. 183]. The jury found in favor of all defendants on plaintiff's deliberate indifference claim [dkt. 183]. The jury found in favor of the plaintiff on her failure to train claim against defendant Scott County with respect to her excessive force claim, and in favor defendant Scott County on all other claims [dkt. 183]. The jury awarded the plaintiff $35,000 for past pain and suffering with respect to her excessive force claim and awarded $3,500 in punitive damages each against defendants Gaudet and Lomba ($7,000 total) [dkt. 183].

## II.  ATTORNEY FEE AWARD

Title 42 U.S.C. § 1988(b) provides, in pertinent part: "In any action or proceeding to enforce a provision of section[] 1983 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

> The purpose of § 1988 is to ensure "effective access to the judicial process" for persons with civil rights grievances. H.R. Rep. No. 94-1558, p. 1 (1976). Accordingly, a prevailing party "'should ordinarily recover an attorney's fee unless special circumstances would render such an award

> unjust.'" S. Rep. No. 94-1011, p. 4 (1976), U.S. Code Cong.
> & Admin. News 1976, p. 5912 (quoting Newman v. Piggie
> Park Enterprises, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19
> L.Ed.2d 1263 (1968)).

Hensley v. Eckerhart, 461 U.S. 424, 429 (1983).

"Unfortunately, the statute does not explain what Congress meant by a 'reasonable' fee, and therefore the task of identifying an appropriate methodology for determining a 'reasonable' fee was left for the courts." Perdue v. Kenny, 130 S.Ct. 1662, 1671 (2010). In determining a reasonable fee award, the "lodestar approach," i.e., the number of hours the attorneys and their employees worked multiplied by the hourly rates prevailing in the community, has "achieved dominance in the federal courts." Gisbrecht v. Barnhart, 535 U.S. 789, 801 (2002).

> Although imperfect, [the loadstar approach] has several
> important virtues: It produces an award that approximates the
> fee the prevailing party would have received for representing
> a paying client who was billed by the hour in a comparable
> case; and it is readily administrable, thereby cabining trial
> judges' discretion, permitting meaning judicial review, and
> producing reasonably predictable results.

Perdue, 130 S.Ct. at 1667 (internal citations omitted).

"The amount of the fee, of course, must be determined on the facts of each case. On this issue the House Report simply refers to twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 388 F.2d 714 (5th Cir. 1974)." Hensley, 461 U.S. at 429-30.

> The twelve factors are: (1) the time and labor required; (2) the
> novelty and difficulty of the questions; (3) the skill requisite to
> perform the legal service properly; (4) the preclusion of
> employment by the attorney due to acceptance of the case; (5)
> the customary fee; (6) whether the fee is fixed or contingent;
> (7) time limitations imposed by the client or the circumstances;
> (8) the amount involved and the results obtained; (9) the
> experience, reputation, and ability of the attorneys; (10) the
> "undesirability" of the case; (11) the nature and length of the

professional relationship with the client; and (12) awards in
similar cases.

Id. at 403, n.3.

> The district court also should exclude from [the] initial
> [loadstar] calculation hours that were not "reasonably
> expended." S. Rep. No. 94-1011, p. 6 (1976). Cases may be
> overstaffed, and the skill and experience of lawyers may vary
> widely. Counsel for the prevailing party should make a good
> faith effort to exclude from a fee request hours that are
> excessive, redundant, or otherwise unnecessary, just as a
> lawyer in private practice ethically is obligated to exclude such
> hours from his fee submission. "In the private sector, 'billing
> judgment' is an important component in fee setting. It is no
> less important here. Hours that are not properly billed to
> one's *client* are not properly billed to one's *adversary* pursuant
> to statutory authority." Copeland v. Marshall, 205 U.S. App.
> D.C. 390, 401, 641 F.2d 880, 891 (1980) (en banc) (emphasis
> in original).

Id. at 434. Another important factor is the "results obtained," which is "particularly
crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some
of his claims for relief." Id.

> Where a plaintiff has obtained excellent results, his attorney
> should recover a fully compensatory fee. Normally, this will
> encompass all hours reasonably expended on the litigation, and
> indeed in some cases of exceptional success an enhanced
> award must be justified.[1] In these circumstances the fee award
> should not be reduced simply because the plaintiff failed to
> prevail on every contention raised in the lawsuit. Litigants in
> good faith may raise alternative legal grounds for a desired
> outcome, and the court's rejection of or failure to reach certain

---

[1]The Supreme Court revisited the "enhancement" issue in Perdue, holding that the
calculation of an attorney's fee based on the lodestar method may be increased due to
superior performance, but only in extraordinary circumstances, and noting that the burden
of proving an enhancement is necessary is on the fee applicant who must produce "specific
evidence" supporting such an enhancement. 130 S.Ct. at 1667, 1673.

grounds is not a sufficient reason for reducing a fee. The result is what matters.

If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

Id. at 436 (internal citations omitted).

Plaintiff's counsel originally requested an attorney fee award of $383,447.75 [dkt. 187-2, p. 1]. In response to issues raised in defendant's resistance to plaintiff's initial fee application, the plaintiff revised her request and now seeks an award of attorney fees in the amount of $391,175.00 [dkt. 205-7, p. 1]. Plaintiff breaks down her fee request as follows:

| Attorney/Paralegal | Hours | Rate ($) | Total ($) |
|---|---|---|---|
| Mark Loevy-Reyes | 781.25 | 395 | 307,483.75 |
| Authur Loevy | 128 | 470 | 57,160 |
| Debra Loevy-Reyes | 53.75 | 350 | 18,812.50 |
| Paralegals | 62.75 | 105 | 6,598.75 |
| Total | | | 391,175.00 |

In itemizing the hours spent by type of activity, as required under Local Rule 54.1(a), plaintiff claims:

|  | Interview | Investiga-tion | Legal Research | Pleadings | Trial Prep | Trial |
|---|---|---|---|---|---|---|
| Mark Loevy-Reyes | 4.5 | 216.25 | 41.75 | 200.25 | 264.5 | 51 |
| Arthur Loevy | .75 | 8.75 | 0 | 0 | 67.75 | 51 |
| Debra Loevy-Reyes | 0 | 11 | 3 | 12 | 24.75 | 0 |
| Paralegals | 2 | 12.25 | 0 | 4 | 44 | 0 |

The parties disagree as to the application and impact of the various Hensley factors on plaintiff's fee request.  The court will address each factor separately.

**A.  Time and Labor Required/Opportunity Cost**

Plaintiff argues that her counsel devoted large amount of billable hours to her case and that commitment presented a substantial opportunity cost.  Plaintiff further notes that the defendants had ample opportunity to settle this case, but never made any offer.  By forcing plaintiff to litigate her claims through trial, plaintiff contends that defendants forced her counsel to focus their resources on her case to the exclusion of others.

Defendants resist plaintiff's contentions, noting that plaintiff's counsel has provided no documentation supporting their assertion that they turned down any other litigation. Defendants cite several cases that plaintiff's counsel were involved in during the pendency of this matter.

Attorney hours may be reduced for inefficiency and duplication of services in cases where more than one attorney is used.  A.J. ex rel. L.B. v. Kierst, 56 F.3d 849, 865 (8th

6

Cir. 1995).  However, the "use of more than one attorney in multiple party litigation has been recognized by . . . [the Eighth Circuit] as both desirable and common."  Id.

While this matter undoubtedly consumed part of plaintiff's counsel's practice, the evidence is less than compelling that other work was turned away due to this case.  Such is the nature of the legal profession.  Specific instances of duplication of services will be addressed below, but generally speaking, while a law firm might choose to have three (or more) lawyers and several  paralegals work on a case, that does not make it reasonable for billing purposes in every case.  This case did not require two trial attorneys.  This is especially true for attorneys who claim to value their time at or above $400 per hour.  Similarly, the court has examined every pleading in this case including the motions for summary judgment.  Attorneys billing at $400 an hour and above, with a practice devoted largely to civil rights practice, do not need to bill legal research for forty-five hours (5-1/2 full work days).  This was a garden variety excessive force claim without a qualified immunity defense and the court was not required to spend any significant amount of time researching to prepare and to conduct the trial.

### B.  Novelty/Difficulty of the Questions/Skill Requisite/Undesirability of Case

Plaintiff's counsel characterizes this matter as extremely risky and uncertain, and notes that the defendants never put any settlement money on the table, which underscores the uphill nature of plaintiff's battle in this case.  Plaintiff further claims that "[t]his was not an easy case to build or win, making it all the less desirable.

Defendants resist these characterizations, claiming that plaintiff's counsel spent the majority of their time on claims that were ultimate unsuccessful (the deliberate indifference and future emotional damages claims).  Defendants Scott County, Greg Gaudet and William Lomba argue that they should not be responsible for work performed that (1) was not successful to begin with and (2) was worked performed to prosecute claims against a prevailing defendant.  Defendants further argue that plaintiff's counsel advertise on their

website that they routinely assert *Monell* claims as part of their practice.  As such, these claims should not have been expensive or difficult to allege and prove.

This case was not unusually difficult.  Fortunately for the plaintiff, the first hour of her restraint was preserved on videotape.  The video is haunting and difficult to watch, but told the story well.  The witnesses were easy to identify and the people who testified were the obvious witnesses that one would identify at the outset of the case.  The entire case arose out of facts that took place in one location over a several hour period of time.

This case was not legally difficult either.  The standards for excessive force and deliberate indifference were not in dispute.  For some reason, the defendants did not raise the complicating issue of qualified immunity.  Rather, the case was made more complex by the addition of plaintiff's unsuccessful claims.  The medical indifference claims are judged by different standards and required expert witnesses.  Late in the case, the plaintiff dismissed her claim against the jail's contract physician, Dr. Ludwig, and then unsuccessfully attempted to bring him back to into the litigation.  Plaintiff's counsel has voluntarily agreed to withdraw her hours related to Dr. Ludwig, but that does not "undo" the additional complexity.

Plaintiff contends that she hired Loevy & Loevy, undeniably skilled attorneys who presented her case professionally, after an attorney in the Quad Cities failed to pay appropriate attention to her case.  Nothing in this order should be taken as any disrespect for either Arthur Loevy or Mark Loevy-Reyes, who are excellent lawyers who recovered a very good result.  The plaintiff implies, but offers scant "proof" that none of the hundreds of qualified lawyers in the Quad Cities would take her case.  A review of the videotape described above makes it abundantly clear that there are many, many qualified attorneys in the Quad Cities who would have taken this case without question.

While it obviously takes some skill to properly discover and try any case, there is nothing about this case that made it any more risky or uncertain than any similar claim. The fact that the defendants were expected to claim (and did claim) that the plaintiff's own

actions caused her damages is part of the defense of nearly all excessive force claims.  This factor does not weigh in favor of the hours expended or rates sought by plaintiff's counsel.

### C.  Customary Fee/Contingent v. Fixed Fee

Plaintiff argues that, unlike defense counsel who get paid "win or lose," they faced the very real possibility of earning $0/hour, and accounting for this risk justifies a higher hourly rate.   Plaintiff further notes that defendants expended a comparable amount of attorney fees on this matter and that the properly hourly rate is plaintiff's counsel's Chicago rate.

Defendants counter that, if plaintiff's counsel's website is to be believed, then the "very real possibility" that plaintiff's counsel would earn $0/hour is remote, i.e., "Of the hundreds of clients we have represented over the years, the number of Loevy & Loevy clients who lost (recovered nothing) is less than 1 percent, a remarkably low figure for this area of law."  Defendants further note that nearly 84% of counsel's claimed time occurred in the year prior to trial, thereby undermining any contention that a premium rate is warranted due to the risk and/or time-value of money.   Defendants dispute plaintiff's contention that defense fees were comparable to plaintiff's fees, noting that defendants against whom plaintiff prevailed (Scott County, William Lomba and Greg Gaudet) were represented by a single attorney.   Defendants urge that the appropriate rates are those customarily charged in the Southern District of Iowa for this type of work.   Defendants note that the cases relied upon by plaintiff's counsel are all distinguishable, which the court will discuss in detail below.

"As a general rule, a reasonable hourly rate is the prevailing market rate, that is, the ordinary rate for similar work in the community where the case has been litigated." Moysis v. DTG Datanet, 278 F.3d 819, 828-29 (8th Cir. 2002) (citation omitted). However, the Eighth Circuit has noted exceptions to the general rule.

> To limit rates to those prevailing in a local community might have the effect of limiting civil rights enforcement to those communities where the rates are sufficient to attract

> experienced counsel.  Civil rights would be more meaningful, then, in those communities (large cities) where experienced attorneys can command their customary fees.  This result would be in direct contravention of the purpose of diffuse enforcement through the "private attorney general" concept.

Case v. City of Cabool, 12 F.3d 799, 805 (8th Cir. 1993).  The specialized skill of counsel has also been recognized as a basis for higher hourly rates.  Hendrickson v. Branstad, 934 F.2d 158, 164 (8th Cir. 1991) (affirming rate based on that of comparable nationally-prominent federal civil rights counsel due to attorney's status as recognized national expert in civil rights law).

The court finds that all attorneys involved will be compensated at $300 per hour, which is less than requested, but much higher than would be charged by or paid to attorneys in the Quad Cities area.  The court is confident that limiting the rates as such will not have the effect of limiting civil rights enforcement, given the number of qualified civil rights attorneys in Eastern Iowa and the Des Moines area.

This was not the case where plaintiff's counsel's skill expedited this matter, nor did it involve an unusually complex legal issue.  Cf. Planned Parentood, Sioux Falls Clinic v. Miller, 70 F.3d 517, 519 (8th Cir. 1995) (awarding plaintiff's counsel Chicago rates for a South Dakota-based claim, noting that plaintiff's lawyers were leaders in the field of reproductive-rights law, had extensive experience in this area, and were able to handle the case in a shorter period of time than a local lawyer).  This case was different from White v. McKinley, cited below, wherein Loevy & Loevy represented an accused child molester in a factually and legally complex and largely circumstantial case who was awarded $14,000,000 in compensatory damages and $2,000,000 in punitive damages in Kansas City and the Kansas City attorneys involved in the case charged as much or more per hour than did the Chicago-based lawyers.  Similarly, in line with the Quad Cities market, the compensable paralegal work will be paid at $85 per hour or less.

### D.  Amount Involved & Results Obtained

"The most critical factor in assessing fees is the degree of success obtained."  Fish v. St. Cloud State Univ., 295 F.3d 849, 853 (8th Cir. 2002) (citing Hensley, 461 U.S. at 434).  Courts must focus on the "overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation" as opposed to considering the claims discretely.  Henseley, 461 U.S. at 435.

> Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the award of a reasonable fee.  Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.  But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

Id. at 440.

Plaintiff argues that she obtained substantial success, despite injuries consisting of subjective complaints of pain and soft tissue injuries.  The jury awarded plaintiff $35,000 in compensatory damage and $7,000 total in punitive damages.

While not disputing that plaintiff is a "prevailing party" and thus, entitled to fees, defendants contend that the plaintiff overstates her success, arguing that the vast majority of time, costs, expenses, and arguments in this case were spent on plaintiff's deliberate indifference to serious medical needs claim, which was rejected by the jury.  Defendant further noes that the jury verdict of $35,000 was less than 10% of her pre-trial settlement demand of $395,000.  Despite plaintiff's assertion that there was a "joint defense," the defendants claim that a great deal of time, preparation and fees were expended in defending motions between plaintiff and defendant Flowers, which were completely unrelated to Scott County's defense on plaintiff's excessive force claim.

In reply, plaintiff argues that it is unfair to rely on her settlement demand of $395,000 because she obviously would have decreased her demand as part of good-faith negotiations had the defendants ever offered any amount in settlement, which they did not. Plaintiff further argues that her excessive force and deliberate indifference claims were flip sides of the same coin, and not one hour of discovery could be fairly characterized as "solely" relating to the deliberate indifference claim.

The court acknowledges that the plaintiff achieved a very favorable result on her excessive force claim, but there was also a defense verdict on her deliberate indifference claim. Plaintiff's other claims were also unsuccessful. While there was definitely some overlap between the claims, the court estimates that a very substantial percentage of the trial and plaintiff's efforts were dedicated to plaintiff's deliberate indifference claim. Given the results obtained, the court finds that a twenty percent (20%) reduction in plaintiff's overall fee award is warranted.

## E.  Experience, Reputation & Ability of Attorneys/Awards in Similar Cases

While plaintiff's counsel submits that their credentials and accomplishments warrant an award of the attorney fees as requested, defendants claim that plaintiff's claims could have been capably handled by local firms. Unlike the cases where plaintiff's counsel were paid the prevailing rates in their "home town" markets due to unique expertise in very specialized civil rights such as freedom of speech and restrictions on a woman's right to abortion and ability to more quickly and efficiently resolve the cases, this case could have been competently handled by local counsel.

In reply, plaintiff's counsel cite to several cases where courts have routinely granted their fee submissions as reasonable. See Dkt. 205, pp. 19-20. Plaintiff also cites to White v. McKinley, 2009 WL 813372 *6 (W.D. Mo. 2009) where Judge Nanette K. Laughrey, in approving a fee request of $1,433,405 ($591,835 of which was attributable to Loevy & Loevy attorneys) noted:

> White's attorneys have significant experience, positive reputations, and -as demonstrated throughout this litigation - ability. Each of White's attorneys has submitted an affidavit concerning his or her experience. A cursory review of national legal research databases demonstrates that White's Loevy & Loevy attorneys in particular have had extensive civil rights trial experience and success. White's filings and the attorneys' trial work were of high quality by any measure; they demonstrated skill in organizing their case, making legal arguments, and presenting evidence. The experience, reputation, and ability of White attorneys weigh significantly in favor of granting this motion.

As stated above, this matter was very capably handled by plaintiff's counsel. They undeniably have extensive experience and success in the civil rights area. Given the reputation and ability of plaintiff's counsel, the court feels that a substantial fee award is in order. However, the fee requested is not reasonable given the uncomplicated nature of the excessive force claimn and some reduction is in order.

### F.  Nature and Length of Professional Relationship with the Client

Neither side argues that this factor weighs either in favor of the fee amount requested or in favor of reducing the fee. The court agrees that there is nothing notable about either the nature or length of the relationship between plaintiff and her counsel that would have a bearing on the fee award.

### G.  Specific Challenges to Plaintiff's Counsel's Billing Entries

Defendants take issue with numerous entries in plaintiff's counsel's billing records, arguing that various inaccuracies render the entire fee application not credible and should be struck. Defendants note that plaintiff's counsel bill in .25 hour increments, which is not acceptable in private practice in the area, where counsel bill in .10 hour increments. Defendants argue that the billing records are replete with both lawyers and paralegals seeking compensation for performing purely clerical tasks, which are part of firm overhead and not compensable. Defendants claim that, while plaintiff's counsel did not "block-bill," it is nonetheless difficult if not impossible to ascertain from their billing entries which tasks

are properly compensable versus those which are not.  Plaintiffs respond to each of defendants' contentions, arguing that there is nothing specious nor inappropriate about their time-keeping or billing entries, but do agree to withdraw various entries either because they are administrative in nature or they relate to ultimately unsuccessful and/or dismissed claims/parties.[2]

Despite the Supreme Court's admonition to the contrary, it appears that plaintiff's fee application has resulted in a "second major litigation." Hensley, 461 U.S. at 437. Although the court would not necessarily expect the parties to agree on the amount of fees in this matter, it is disappointing when the court's review of the record reveals entries that are clearly inflated and/or non-compensable, as well as challenges to entries that lack merit, to say the least.  Thus, the court has reviewed every billing entry, compared it to the docket sheet in this matter, and makes the following adjustments:

| Attorney Mark Loevy-Reyes | | | | |
|---|---|---|---|---|
| Date(s) | Hours Billed | Activity | Adjusted Time | Rationale |
| 11/28-29/07 | 2.0 total | Draft Pro Hac Vice Motions | .5 | Excessive; each motion was 1 pg/2 ¶ |

---

[2]Despite the withdrawal of numerous time entries, the fee requested in plaintiff's reply brief is nonetheless higher than the fee award requested in its initial application. Such an increase is troubling, and defendants claim is explained, in part, by shifting attorney Jon Loevy's hours to Mark Loevy-Reyes' hours and Mark Kanvotiz's hours to Arthur Loevy.  Rather than acknowledging an absence of "billing judgment," plaintiffs assert that those changes were made after consulting with other layers and concluding that Mark Loevy-Reyes and Arthur Loevy spent additional hours working with Kanoviz and Jon Loevy.  Plaintiff's counsel further argues that nothing prohibited them from supplementing their contemporaneous records with reconstruction from available evidence. The court is not convinced by such argument or impressed by such lack of billing judgment.

| 12/28/07 | .5 | Completed ECF filling forms | .1 | Excessive; clerical to prepare; atty need only review and sign |
|---|---|---|---|---|
| 1/4/08 | 1 | Draft Motion for Discovery | .5 | Excessive; motion was 2 pg/5 short ¶ |
| 1/4/08 | .25 | Edited/filed motion | .1 | Filing motions is clerical & non-compensable |
| 1/7/08 | .25 | File motion identify | 0 | filing motion is clerical & motion allegedly filed appears to have been filed on 1/4/08 |
| 1/28/08 | 1.25 | Draft/file amended complaint | 1.0 | .25 reduction for filing motion - clerical & non-compensatory |
| 2/12/08 | .25 | Receive/review appearance | .1 | Excessive |
| 3/20/08 | .25 | Receive/review appearance | .1 | Excessive |
| 5/7 - 5/8/08 | 2 total | draft motion for sched. order, tc, revised motion, sent to paralegal | 1 | excessive; 1 pg/8 short ¶ motion |
| 6/25/08 | .75 | Request medical records | .25 | Excessive; could have been performed by paralegal |
| 7/10/08 | .25 | Send notice dep, Ludwig | 0 | Clerical & non-compensatory |
| 12/23/08 | 1.75 | Draft motion to extend | .75 | Excessive; motion was 1½ pgs/8 short ¶ |
| 2/18/08 | .25 | Draft notice of dep for AEDEC | .1 | Excessive; could have been performed by paralegal |

| 3/18/08 | .5 | Subpoean Bea | .25 | Excessive; could have been performed by paralegal |
|---------|-----|--------------|-----|---------------------------------|
| 5/7/08 | .5 | Receive release | .1 | Excessive |
| 10/16/08 | 1.5 | Draft subpoenas, notice for deposition | .5 | Excessive; could have been performed by paralegal |
| 6/9/09 | .5 | Draft notice dep.letter | .25 | Excessive |
| 8/12/09 | .5 | Received/reviewed SJ order | .3 | Excessive; order was 2 pgs/5 ¶ |
| 8/13/09 | .75 | Received/reviewed def. Motion exam | .3 | Excessive; motion was 2 pgs. excluding caption & signature block |
| 8/20/09 | 1 | schedule expert deps | 0 | clerical & non-compensable |
| 9/4/09 | 1.5 | Finish up response/file | 1.25 | deduct .25 for filing which is clerical & non-compensable |
| | TOTAL: 17.5 | | TOTAL: 7.45 | |

In addition to the above reductions, the court notes that the attorneys collectively charged 357 hours of trial preparation, which equates to nearly nine straight weeks of trial prep by one attorney, billing 40 hours per week.  The court further notes that Debra Loevy-Retes charged 24.75 hours to trial prep and she did not try the case.  While the trial was continued on one occasion, this is still excessive for purposes of an award of attorney fees.  Four weeks' prep trial for this trial is more than sufficient.  Thus, in addition to the deductions above, the court will deduct Debra Loevy-Reyes' trial prep hours and reduce Mark Loevy-Reyes' trial prep hours by 104.5 to 164.

| Paralegal Emily Brown | | | | |
|---|---|---|---|---|
| **Date** | **Hours Billed** | **Activity** | **Adjusted Hours** | **Rationale** |
| 5/3/10 | .5 | Mailed letter to client | 0 | excessive; clerical & non-compensable |
| 4/5/10 | .5 | Ordered deposition from court reporter | 0 | excessive; clerical & non-compensable |
| 4/7/10 | .5 | Ordered deposition from court reporter | 0 | excessive; clerical & non-compensable |
| 3/31/10 | 1 | ordering hearing transcripts/send payment | 0 | excessive; clerical & non-compensable |
| 3/22/10 | 1 | sending faces and order transcripts | 0 | excessive; clerical & non-compensable |
| 3/18/10 | 1 | compiled/filed motions in limine responses | 0 | clerical & non-compensable |
| 3/17/10 | 2 | compiled/filed motions in limine responses | 0 | clerical & non-compensable |
| 3/10/10 | 1 | filed pleadings and sent faxes to opposing counsel | 0 | clerical & non-compensable |
| 3/1/10 | .5 | Ordered hearing transcript | 0 | excessive; clerical & non-compensable |
| 2/5/10 | 7 | bates stamping exhibits and compiling FPTO documents | 5 | bates stamping documents is clerical & non-compensable |

| 1/28/10 | 1 | scheduling depositions and booking court reporters | 0 | clerical & non-compensable |
|---------|---|-----|---|-----|
| 1/14/10 | 1 | fililng pleadings/ motions in limine responses | 0 | clerical & non-compensable |
| 12/14/09 | .5 | Filed motion | 0 | clerical & non-compensable |
| 12/9/09 | .5 | Faxes to all counsel of record | 0 | clerical & non-compensable |
| 11/30/09 | 1 | scanning and emailing depositions | 0 | clerical & non-compensable |
| 11/23/09 | 1 | finding and mailing medical records | 0 | clerical & non-compensable |
| | Total: 20 | | Total: 5 | |

| Paralegal Anne Gottschalk | | | | |
|---------|---|---|---|---|
| **Date** | **Hours Billed** | **Activity** | **Adjusted Hours** | **Rationale** |
| 8/25/09 | 1 | bates stamping produce docs | 0 | clerical & non-compensable |
| 8/26/09 | .5 | bates stamping produced docs | 0 | clerical & non-compensable |
| 8/28/08 | 5 | bates stamping produced docs, scanned/emailed to Mark | 0 | clerical & non-compensable |

| 10/20/09 | 8 | compiling Slater trial exhibits, labeling them, copying them | 0 | clerical & non-compensable |
|---|---|---|---|---|
| | Total: 14.5 | | Total: 0 | |

| Paralegal John Darrah | | | | |
|---|---|---|---|---|
| **Date** | **Hours Billed** | **Activity** | **Adjusted Hours** | **Rationale** |
| 10/21/08 | .5 | faxed and mailed correspondence and discovery | 0 | clerical & non-compensable |
| 1/16/08 | .25 | located court reporter and scheduled deposition | 0 | clerical & non-compensable |
| 2/2/09 | .25 | drafted and mailed correspondence | .1 | mailing letters is clerical & non-compensable |
| 2/18/09 | .25 | edited and faxed correspondence | .1 | faxing letters is clerical & non-compensable |
| 3/2/09 | .25 | Faxed and mailed correspondence | 0 | clerical & non-compensable |
| 4/21/09 | .5 | fax and mailed correspondence to counsel; scheduled deposition | 0 | clerical & non-compensable |
| 4/22/09 | .25 | faxed and mailed notice of depositions | 0 | clerical & non-compensable |

| | | | | |
|---|---|---|---|---|
| 5/11/09 | .25 | faxed and mailed discovery | 0 | clerical & non-compensable |
| 9/3/09 | .25 | CM/ECF filing of pleading | 0 | clerical & non-compensable |
| 9/4/09 | .25 | CM/ECF filing of pleading | 0 | clerical & non-compensable |
| | Total: 3 | | Total: .2 | |

Finally, with respect to travel time, plaintiff's counsel presented no evidence that they were performing substantive legal work during the travel time. Rather, it appears that the majority of the travel time was spent driving from Chicago to the Quad Cities for depositions or court hearings. The court will compensate Mark Loevy-Reyes 42.5 hours and Debra Loevy-Reyes' 7 hours of travel time at $100 per hour.

### III.  CONCLUSION

Taking into account the above deductions and findings, the court finds the following hours to be compensable:

| | Hours | Rate | Travel Time | Rate | Total |
|---|---|---|---|---|---|
| Mark Loevy-Reyes | 624.20 | $300.00 | 42.5 | $100 | $191,510 |
| Arthur Loevy | 128 | $300.00 | 0 | 0 | $38,400 |
| Debra Loevy-Reyes | 22 | $300.00 | 7 | $100 | $7,300 |
| Paralegals | 30.45 | $85.00 | 0 | 0 | $2,588.25 |
| | | | | Subtotal | $238,768.25 |
| | | | Minus 20% Reduction for Success Achieved | | ($47,953.65) |
| | | | | TOTAL | $190,814.60 |

Upon the foregoing,

**IT IS ORDERED** that plaintiff's counsel is awarded fees in the amount of $190,814.60.

**DATED** this 31st day of March, 2011.

JOHN A. JARVEY
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF IOWA